UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON – SYNDICATE 1861, SUBSCRIBING TO POLICY NO. ANV122398A; CRUM & FORSTER SPECIALTY INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NUMBER DOH00746111; and STARSTONE SPECIALTY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> - against - <br><br> TIMOTHY DAILEADER, <br><br> Defendant. | **MEMORANDUM OPINION AND ORDER** <br> 22 Civ. 2038 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

In this declaratory judgment action brought under the New York C.P.L.R.,
plaintiff insurers seek a declaration that they have no duty to defend and indemnify Defendant
Timothy Daileader in adversary proceedings pending in the United States Bankruptcy Court for
the District of South Carolina (the "Bankruptcy Proceeding").  Defendant Daileader was a
director and officer of debtors Oaktree Medical Center, LLC, Oaktree Medical Centre PC
(collectively, "Oaktree"), and Labsource, LLC (together with Oaktree, "Debtors").  (Am. Cmplt.
(Dkt. No. 1-3) ¶¶ 31–32)  In the Bankruptcy Proceeding, the Chapter 7 trustee (the "Trustee")
alleges that Defendant Daileader breached his fiduciary duties to Debtors in violation of state
law.  (Id. ¶¶ 41–47)

The Complaint was filed on February 1, 2022, in Supreme Court of the State of
New York, New York County.  (Cmplt. (Dkt. No. 1-1))  The plaintiff insurers – who sold excess

director-and-officer ("D&O") insurance policies to Debtors – contend that they have no duty to defend or indemnify Daileader in the Bankruptcy Proceeding because of the "Bankruptcy/Insolvency Exclusions" in Plaintiffs' respective policies.  (Am. Cmplt. (Dkt. No. 1-3) ¶¶ 54-61)

On March 11, 2022, Daileader removed the case to this District.  (Notice of Removal (Dkt. No. 1))  The Notice of Removal asserts that this Court has subject matter jurisdiction pursuant to the federal bankruptcy jurisdiction statute and corresponding removal provision, see 28 U.S.C. §§ 1334(b), 1452, and pursuant to the federal "arising under" jurisdiction statute and corresponding removal provision, see 28 U.S.C. §§ 1331, 1441.  (Id. at 1)[1]

Plaintiffs have moved to remand, arguing that this Court should abstain from exercising bankruptcy jurisdiction, and that the action does not arise under federal law.  For the reasons stated below, Plaintiffs' motion to remand will be granted.

## BACKGROUND[2]

## I.   THE PARTIES

Plaintiffs are insurers who sold excess D&O coverage to Debtors.  "[Plaintiff] Syndicate 1861 is an insurance syndicate organized and existing under the laws of England, with

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

[2] The Amended Complaint's factual allegations are presumed true for purposes of resolving Plaintiffs' motion to remand.  See Salzberg v. Aetna Ins. Co., No. 17 CV 7909 (VB), 2018 WL 1275776, at *1 (S.D.N.Y. Mar. 12, 2018) ("In considering the motion to remand, the Court accepts as true all relevant allegations in the complaint and construes all factual ambiguities in favor of plaintiff.").  A court "may also consider the parties' affidavits and attached exhibits in deciding [a] motion to remand."  M.S.S. Const. Corp. v. Century Sur. Co., No. 15 CIV. 2801 ER, 2015 WL 6516861, at *1 n.1 (S.D.N.Y. Oct. 28, 2015) (citing Gov't Emp. Ins. Co. v. Saco, No. 12 Civ. 5633 (NGG) (MDG), 2015 WL 4656512, at *3 (E.D.N.Y. Aug. 5, 2015) ("Because [a

its principal place of business in London, England; [Plaintiff] Crum & Forster is an insurance

company organized under the laws of the State of Delaware with its principal place of business

in Morristown, New Jersey; [Plaintiff] DOH00746111 Subscribers [is] an unincorporated

association comprised of individual syndicates subscribing to excess policy number

DOH007646111, which is being effected through CFC Underwriting Limited, which is a

managing general agent organized and existing under the laws of England, with its principal

place of business in London, England; [and Plaintiff] StarStone is an insurance company

organized and existing under the laws of the State of Delaware with its principal place of

business in Jersey City, New Jersey." (Am. Cmplt. (Dkt. No. 1-3) ¶¶ 2–5 (formatting altered))

Defendant Daileader is a former director and officer of Debtors. (Am. Cmplt. ¶¶

31–32) He resides in New York. (Id. ¶ 6)

## II.    THE AMENDED COMPLAINT

Plaintiffs each issued excess D&O insurance policies to Debtors for periods

running from mid- or late 2018 (varying by issuer) to January 2020. Each policy is for a

different level (secondary, tertiary, etc.), with a liability limit of $1 million in excess of the

combined liability limits of the primary policies. (Am. Cmplt. ¶¶ 11, 15, 18, 21) Each policy

adopts the terms of the "Followed Policy," which is Debtors' primary D&O insurance policy,

issued by Landmark American Insurance Company for the period July 2018 to January 2020,

with a liability limit of $1 million. (Id. ¶¶ 12, 14, 16–17, 19–21, 23–24)

The "Followed Policy" contains the following Bankruptcy/Insolvency Exclusion:

The Insurer shall not be liable to make any payment for Loss under this policy in
connection with any Claim made against any Insured:

---

motion to remand] is a jurisdictional inquiry, a court can look beyond the face of the complaint
. . . .")).

1. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any <u>Wrongful Act</u> that is alleged to have caused, directly or indirectly, in whole or in part:

   a. The bankruptcy or insolvency of the <u>Insured Organization</u>;

   b. The <u>Insured Organization's</u> filing of a petition, or a petition being filed against the <u>Insured Organization</u> pursuant to the federal Bankruptcy Code or any similar state law;

   c. The <u>Insured Organization</u> assigning its assets for the benefit of its creditors; or

   d. By any other means seeking protection under the common or statutory law as a result of insolvency or financial impairment.

2. Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, the <u>Insured Organization</u> having sustained a financial loss due to a <u>Wrongful Act</u> by or on behalf of any <u>Insured Person</u> that actually or allegedly occurred before the date that the <u>Insured Organization</u> or other party sought protection of the <u>Insured Organization['s]</u> assets by any means  . . . .

3. Brought or maintained by or on behalf of any creditor or debt-holder of the <u>Insured Organization</u>, or any <u>Claim</u> arising out of any actual or alleged <u>Wrongful Act</u>, where such <u>Wrongful Act</u> actually or allegedly results in the <u>Insured Organization's</u> failure, refusal or inability to pay debts or amounts due and owing, including but not limited to <u>Claims</u> alleging misrepresentation in connection with any extension of credit or in connection with the purchase or sale of a debt instrument, or <u>Claims</u> alleging any <u>Wrongful Acts</u> where such <u>Wrongful Acts</u> actually or allegedly result in the deterioration in the value of any debt instrument or security as a result of, wholly or in part the bankruptcy or insolvency of the <u>Insured Organization</u>.

(Am. Cmplt. (Dkt. No. 1-3) ¶ 28, Ex. E at 131 (emphases in original))

In September 2019, Debtors filed Chapter 7 bankruptcy petitions in the United States Bankruptcy Court for the Western District of North Carolina.  The cases have since been transferred to the United States Bankruptcy Court for the District of South Carolina and are pending there.  See <u>In re Labsource, LLC</u>, Case No. 19-05161-hb (Bankr. D.S.C.); <u>In re Oaktree</u>

Medical Centre, LLC, Case No. 19-05154-hb (Bankr. D.S.C.); In re Oaktree Medical Centre, PC, Case No. 19-05155-hb (Bankr. D.S.C.).

In an April 2021 letter to Oaktree's insurance broker, which was subsequently forwarded to Oaktree's insurers, the Trustee alleged that in 2018, Defendant Daileader assumed management and control over (1) Oaktree, a pain management practice; and (2) Labsource, a laboratory that Oaktree operated.  The Trustee claimed that Daileader had committed wrongdoing and engaged in poor business practices, including self-dealing and failing to coordinate a sale or refinancing, causing Debtors' net liabilities to increase by millions of dollars and ultimately precipitating Debtors' Chapter 7 bankruptcy filings.  The Trustee threatened to file adversary complaints against Defendant Daileader in Debtors' respective bankruptcy proceedings.  (Am. Cmplt. (Dkt. No. 1-3) ¶¶ 29–36)  In June 2021, the Trustee provided Oaktree's insurance broker with a draft of the threatened adversary complaint, and in September 2021 the Trustee filed a complaint in each bankruptcy proceeding.  (Id. ¶¶ 37, 41, 47)  As to Daileader, the amended adversary complaints allege breach of fiduciary duty, negligence and gross negligence, unjust enrichment, and fraud.  (Id. ¶¶ 39, 47)

Between August 2021 and November 2021, Plaintiffs sent letters to Defendant Daileader asserting that the Trustee's allegations in the Adversary Proceedings triggered the Bankruptcy/Insolvency Exclusion, and denying coverage.  (Am. Cmplt. (Dkt. No. 1-3) ¶¶ 48–53)  On February 1, 2022, Plaintiffs brought the instant action, seeking a declaratory judgment that they have no duty to defend Daileader in the Adversary Proceedings due to the Bankruptcy/Insolvency Exclusion provision, and that even "if the Bankruptcy/Insolvency Exclusion were found to be void as an ipso facto clause or otherwise," Plaintiffs would still have no duty to defend Daileader because "otherwise [Plaintiffs] would be unduly denied the benefit

of arms-length underwriting and policy term negotiations with Oaktree [] and the expressly agreed upon terms and provisions, and a material condition of the issuance, of [Plaintiffs' policies]." (Am. Cmplt. (Dkt. No. 1-3) ¶¶ 54-61)

### III.    PROCEDURAL HISTORY

Plaintiffs Syndicate 1861, Crum & Forster, and StarStone filed suit in Supreme Court, New York County, on February 1, 2022. (Cmplt. (Dkt. No. 1-1))  On February 17, 2022, Plaintiffs filed the Amended Complaint, which adds DOH00746111 Subscribers as an additional plaintiff. (Am. Cmplt. (Dkt. No. 1-3))  Plaintiffs served Daileader on February 26, 2022.  See Aff. of Service,  Certain Underwriters at Lloyd's London – Syndicate 1861, Subscribing to Policy No. ANV122398A v. Daileader, Index No. 650484/2022 (N.Y. Cnty. Sup. Ct. Mar. 10, 2022), NYSCEF Doc. No. 33.

As discussed above, the Amended Complaint seeks a declaratory judgment under N.Y.C.P.L.R. §§ 503 and 3001 that Plaintiffs have no duty to defend or indemnify Daileader in the Adversary Proceedings, because of a Bankruptcy/Insolvency Exclusion in the applicable D&O policies. (Am. Cmplt. (Dkt. No. 1-3) ¶¶ 54-61)

On March 11, 2022, within thirty days of service, see 28 U.S.C. § 1446(b), Defendant Daileader removed the case to this District. (Notice of Removal (Dkt. No. 1))  The alleged bases for federal jurisdiction set forth in the Notice of Removal are bankruptcy jurisdiction under 28 U.S.C. § 1334(b) and federal question jurisdiction under 28 U.S.C. § 1331. (Id. ¶¶ 24-39).  The Notice of Removal does not allege that diversity of citizenship provides a basis for the exercise of federal jurisdiction.[3]

---

[3] There was not complete diversity of citizenship when the Notice of Removal was filed, because the Amended Complaint raised claims against then-defendant Aaron Kibbey, a New

On April 11, 2022, Plaintiffs moved to remand (Mot. to Remand (Dkt. No. 12); Remand Br. (Dkt. No. 12-1)), and on May 13, 2022, Daileader filed opposition papers. (Def. Opp. (Dkt. No. 21); Mascia Decl. (Dkt. No. 27)) On May 27, 2022, Plaintiffs filed a reply. (Reply (Dkt. No. 28))

In moving to remand, Plaintiffs argue that 28 U.S.C. § 1334(c)(2) requires that this Court abstain from exercising its bankruptcy jurisdiction. Plaintiffs contend that the instant action is "a state action implicat[ing] exclusively state-law claims that can be adequately reviewed by the state court, and the sole basis for federal jurisdiction is the action's 'relation to' a pending bankruptcy." (Remand Br. (Dkt. No. 12-1) at 5) In the alternative, Plaintiffs argue that – even if abstention is not mandatory – "equitable principles favor remand," because "state law exclusively controls Plaintiffs' claims, [the instant case] is a 'non-core' proceeding, and there is an extensive degree of remoteness between the claims in the Amended Complaint and Oaktree's Bankruptcy." (Id. at 6)

In opposing remand, Daileader argues that abstention is not mandatory. According to Defendant, "this action implicates 'core' bankruptcy jurisdiction because [Plaintiffs]' claims 'arise in' a cause under the U.S. Bankruptcy Code," given that "the Bankruptcy/Insolvency Exclusion is the only subject of [the] . . . Amended Complaint. . . ." (Opp. (Dkt. No. 21) at 7–8 (emphasis in original)) Daileader further argues that mandatory abstention does not apply "because this action cannot be timely adjudicated in New York State Supreme Court as compared to the potential federal venues for this case," and that Plaintiffs have not met "their burden of demonstrating that permissive abstention or equitable remand

---

Jersey resident. (Am. Cmplt. (Dkt. No. 1-3) ¶ 7) As discussed above, Plaintiffs Crum & Forster and StarStone have their principal place of business in New Jersey. (Id. ¶¶ 3, 5) .

appl[ies]." (Id. at 8–9)  Daileader also argues that "separate federal question jurisdiction . . . exists under 28 U.S.C. § 1331," because Plaintiffs' "case necessarily raises and depends on the resolution of substantial federal issues," namely, whether the Bankruptcy/Insolvency Exclusion is a "void ipso facto clause under the Bankruptcy Code."  (Id. at 8)

## DISCUSSION

## I.   LEGAL STANDARD

"'Generally, a defendant in an action pending in state court may remove that case to federal court only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction.'" Audi of Smithtown, Inc. v. Volkswagen of Am., Inc., No. 08–CV–1773 (JFB)(AKT), 2009 WL 385541, at *3 (E.D.N.Y. Feb. 11, 2009) (quoting Citibank, N.A. v. Swiatkoski, 395 F.Supp.2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)).

On a motion to remand, "[t]he party seeking to preserve removal has the burden of proving that subject matter jurisdiction exists." S.M. v. Oxford Health Plans (NY), Inc., No. 12 CIV. 4679 (PGG), 2013 WL 1189467, at *2 (S.D.N.Y. Mar. 22, 2013) (citing Pan Atl. Grp. v. Republic Ins. Co., 878 F. Supp. 630, 638 (S.D.N.Y. 1995)).  "'Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper.'" Goel v. Ramachandran, 823 F. Supp. 2d 206, 210 (S.D.N.Y. 2011) (quoting United Food & Com. Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)).  The Second Circuit has instructed that, "out of respect for the limited jurisdiction of the federal courts and the rights of states, [a court] must resolve any doubts against removability." In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. ("MTBE"), 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks and alteration omitted); see also Anwar v. Fairfield Greenwich Ltd., 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009)

("Any doubts regarding the propriety of removal are resolved in favor of remand, and 'federal courts construe the removal statute narrowly.'" (quoting <u>Lupo v. Human Aff. Int'l, Inc.</u>, 28 F.3d 269, 274 (2d Cir. 1994))).

## II.   <u>ANALYSIS</u>

### A.   <u>Whether this Case Arises Under Federal Law</u>

#### 1.   <u>Removal Jurisdiction and the Well-Pleaded Complaint Rule</u>

"'To determine if a case involves a federal question, courts generally turn to the 'well-pleaded complaint' rule – that is, courts examine 'what necessarily appears in the plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation of avoidance of defenses . . . [that] the defendant may interpose.'" <u>Backer v. Cooperatieve Rabobank U.A.</u>, 338 F. Supp. 3d 222, 231 (S.D.N.Y. 2018) (quoting <u>Arditi v. Lighthouse Int'l</u>, 676 F.3d 294, 298 (2d Cir. 2012) (further quotation omitted)); <u>see Louisville & Nashville R. Co. v. Mottley</u>, 211 U.S. 149, 152 (1908) ("It is not enough that the plaintiff alleges some anticipated [federal] defense to his cause of action. . . .")  The well-pleaded complaint rule applies in the removal context.  <u>See</u>, <u>e.g.</u>, <u>Backer</u>, 338 F. Supp. 3d at 227, 231; <u>Freeman v. Burlington Broadcasters, Inc.</u>, 204 F.3d 311, 318-19 (2d Cir. 2000).

#### 2.   <u>Application</u>

Plaintiffs seek a declaratory judgment under C.P.L.R. §§ 503 and 3001 that (1) because the Trustee "alleges [w]rongful [a]cts against Daileader . . . , [an] Insured Person[], that the Trustee contends resulted in financial losses to [Debtors and in Debtors'] inabilities to pay debts and ultimately caused [Debtors] to have to file for Chapter 7 bankruptcy protection . . . , [c]overage for [Daileader in the Bankruptcy Proceeding] is precluded under [Plaintiffs' policies] in their entirety by virtue of the Bankruptcy/Insolvency Exclusion;" and (2) even "if the Bankruptcy/Insolvency Exclusion were found to be void as an <u>ipso facto</u> clause or otherwise,"

Plaintiffs would still have no duty to defend Daileader because the exclusion is part of "the benefit of arm's-length underwriting and policy term negotiations" with a "sophisticated business entity." (Am. Cmplt. (Dkt. No. 1-3) ¶¶ 56–61)

       The Amended Complaint thus seeks a declaration, pursuant to the C.P.L.R.,  as to (1) the proper application of the Bankruptcy/Insolvency Exclusion provision; and (2) whether the Bankruptcy/Insolvency exclusion is part of the "benefit of the bargain" that Plaintiffs struck with the insureds.  The Amended Complaint does not seek a declaration as to a question of federal law, nor does it make any assertion about federal law.

       Although, as Defendant states, Plaintiffs "seek a declaration that they have no duty to defend or indemnify Mr. Daileader against the adversary proceedings <u>specifically because of the filing of the Oaktree bankruptcy cases</u>" (Opp. (Dkt. No. 21) at 12 (emphasis in original)), Plaintiffs' claim for relief is not predicated on federal law.  Instead, the federal bankruptcy proceedings are merely a factual predicate for Plaintiffs' state law claim.

       This case thus resembles <u>National Union Fire Insurance. Co. of Pittsburgh, PA v. Compaction Systems Corp. of New Jersey</u>, No. 09 CV. 6216 (BSJ), 2010 WL 11598017, at *3 (S.D.N.Y. Aug. 2, 2010).  In that case, the plaintiff insurer sought a declaratory judgment concerning the scope of coverage pursuant to a prior settlement agreement between the parties. <u>Id.</u> at *1.  Defendant removed the case, arguing that – "while the Complaint [did] not assert a federal cause of action [–] there [was] a substantial question of federal law," because the parties' dispute regarding the settlement agreement and the scope of coverage "arose under the Comprehensive Environmental Response, Compensation, and Liability Act ('CERCLA')," a federal statute.  <u>Id.</u> at *3.  The court rejected that argument, holding that "insurance coverage

disputes, including those involving claims for coverage associated with CERCLA-created liabilities, are a matter of state law governing the interpretation of contracts." Id.

Similarly, here, while the Amended Complaint relies on a policy exclusion triggered by the filing of a federal bankruptcy proceeding, that fact does not convert a state law insurance dispute into an action raising a substantial question of federal law. In order to trigger application of the Bankruptcy/Insolvency Exclusion, Plaintiffs must demonstrate that the adversary proceedings are "Claim[s] made against an[] Insured alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, in whole or in part, any Wrongful Act that is alleged to have caused, directly or indirectly, in whole or in part, the bankruptcy or insolvency of the Insured Organization [and/or] [t]he Insured Organization's filing of a petition . . . pursuant to the Federal Bankruptcy Code." (Am. Cmplt. (Dkt. No. 1-3) ¶ 28) The Bankruptcy/Insolvency Exclusion will be construed under state contract law, however, and not under federal law. See Westchester Fire Ins. Co. v. Schorsch, 186 A.D.3d 132, 139–40 (1st Dept. 2020) (dispute involving D&O insurance coverage for defending against a suit by a creditors' trust formed in bankruptcy; stating that "[i]n an action for a judgment declaring the parties' rights under an insurance policy, this Court must be guided by [New York] rules of contract interpretation[,] because an insurance policy is a contract between the insurer and the insured") (quotation omitted); Alvarez v. XL Specialty Ins. Co., No. 655391/2019, 2020 WL 7011751, at *2-4 (N.Y. Sup. Ct. Comm. Div. Nov. 27, 2020) (dispute involving D&O insurance coverage for defending against an adversary proceeding; applying New York contract law to construe the policy terms "claim," "arise out of," and "involve"); CT Inv. Mgmt. Co., LLC v. Chartis Specialty Ins. Co., 130 A.D.3d 1, 6-7 (1st Dept. 2015) (applying New York law to interpret the term "bankruptcy" as used in a bankruptcy/insolvency exclusion); see also

Blankenship v. Philadelphia Indem. Ins. Co., No. 4:12CV293SNLJ, 2012 WL 3765107, at *4

(E.D. Mo. Aug. 30, 2012) (whether a "money judgment stemming from a federal lawsuit"

constituted a "loss" under an insurance policy did not "involve substantial questions of federal

law," but instead presented state law issues involving contract interpretation; granting remand

motion).

   And although the Amended Complaint "expressly seek[s] declaratory relief in the

event that the Bankruptcy/Insolvency Exclusion is found to be a void ipso facto clause under the

Bankruptcy code" (Opp. (Dkt. No. 21) at 20), Plaintiffs thereby "allege [an] anticipated [federal]

defense," which does not satisfy the well-pleaded complaint rule.  Louisville & Nashville R. Co.,

211 U.S. at 152; see 13D Wright & Miller, Fed. Prac. & Proc. Juris. § 3566 (3d ed.) ("[T]he

well-pleaded complaint rule bars a plaintiff from invoking original federal jurisdiction by

anticipating in the complaint a defense that defendant may raise.").

   The parties have not cited, and the Court has not found, a case addressing whether

anticipating an ipso facto clause defense to a bankruptcy/insolvency exclusion in a D&O policy

satisfies the well-pleaded complaint rule.  The closest in-circuit authority is Liberty Mut. Ins. Co.

v. Lone Star Indus., Inc., 313 B.R. 9 (D. Conn. 2004).  There, plaintiff insurer brought a

declaratory judgment action in Connecticut state court to determine its "liability for defense and

indemnity costs in thousands of silica bodily injury claims [] pending against Defendant

[insured]."  Id. at 12.  The source of plaintiff insurer's potential liability was a settlement

agreement that the insurer and the insured had entered into as part of defendant insured's prior

bankruptcy proceeding.  See id.  The insured removed the insurer's declaratory judgment action

to federal court.  The insurer filed a remand motion, arguing that it was "seeking a declaration of

its rights under state law as it pertains to the applicable insurance contracts."  See id. at 12-13.

Applying the well-pleaded complaint rule to the "arising under" provision of 28 U.S.C. §

1334(b),[4] the court held that the insurer's claims did not "arise under" bankruptcy law, and

"[t]hus, even if there [was] a defense to the action involving substantive statutory bankruptcy

law, that [was] not a basis for removal." Id. at 16.  The court went on to grant the insurer's

remand motion.  See id. at 21.

 Several out-of-circuit cases are likewise instructive.

 In Iberiabank v. Beneva 41-I, LLC, 701 F.3d 916 (11th Cir. 2012), the Federal

Deposit Insurance Corporation ("FDIC") had assigned certain assets and liabilities of a failed

bank, including a sublease of property, to plaintiff subtenant.  The failed bank's sublease with

defendant property owner, which plaintiff subtenant had assumed, included a termination clause

pursuant to which defendant property owner had the right to "terminate the [s]ublease if (i) [the

failed bank was] sold and/or transferred to another banking institution; or (ii) [the failed bank

sold] and/or transfer[red] all or substantially all of its assets."  Id. at 918.  After defendant

property owner sought to exercise the termination clause and terminate the sublease, plaintiff

---

[4] Courts in this Circuit have "interpret[ed] the phrase 'arising under' in 28 U.S.C. § 1334[] in the
same manner that courts interpret the phrase in the federal question jurisdiction statute, 28 U.S.C.
§ 1331, namely, that 'the plaintiff's statement of his own cause of action [must] show[ ] that it is
based upon federal law.'" KeyBank Nat'l Ass'n v. Franklin Advisers, Inc., 600 B.R. 214, 226
(S.D.N.Y. 2019) (citing and quoting Winstar Holdings, LLC v. Blackstone Group L.P., No. 07
Civ. 4634(GEL), 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007); see Studebaker-Worthington
Leasing Corp. v. Michael Rachlin & Co., LLC, 357 F. Supp. 2d 529, 535 n.7 (E.D.N.Y. 2004)
("[28] U.S.C. §§ 1331 and 1334 are comparable in that they both use the phrase 'arising under'
in defining the limits of federal court jurisdiction."); 1 Norton Bankr. L. & Prac. 3d § 4:93 ("The
'well-defined' meaning of 'arising under' for § 1331 purposes has been a source of its meaning
for § 1334(b) purposes.").  For its discussion of the well-pleaded complaint rule, Liberty Mutual
relies on Caterpillar Inc. v. Williams, 482 U.S. 386 (1987), a case in which jurisdiction was
predicated on 28 U.S.C. § 1331.  See Liberty Mutual, 313 B.R. at 16 (citing Caterpillar, 482 U.S.
at 392-93); Caterpillar, 482 U.S. at 392 n.6 (citing 28 U.S.C. § 1331).  Therefore, Liberty
Mutual's discussion of the well-pleaded complaint rule and "arising under" jurisdiction is
relevant to the § 1331 analysis here.

subtenant brought a declaratory judgment action in federal court, seeking a declaration that "the sublease was still in effect without the termination clause," because "the termination clause was unenforceable under 12 U.S.C. § 1821(e)(13)(A)," a provision of the FDIC statute that prohibits ipso facto clauses in a manner "analogous to the unenforceability of ipso facto clauses in the bankruptcy context." Id. at 919, 920 n.5.  The court concluded that it had jurisdiction over the declaratory judgment action.  "Although the anticipated cause of action . . . [was] a state contract claim, resolution of the dispute require[d] interpretation of a substantial federal issue." Id. at 919 n.4.  The court noted, however, that if the property owner had sued to enforce the termination clause, "the federal issue would not [have] appear[ed] on the face of a well-pleaded complaint by [the property owner]," because in that scenario the federal issue – whether the termination clause was an unenforceable ipso facto clause – would have been "a defense by [the subtenant]." Id.

In Jain v. Clarendon Am. Co., 304 F. Supp. 2d 1263 (W.D. Wash. 2004) , Plaintiffs were directors and officers who had been ordered to disgorge profits from insider trading conducted in violation of Section 16(b) of the Securities Exchange Act.  When the company's D&O insurers refused to indemnify plaintiffs, they sued in state court for breach of contract and declaratory relief.  The insurer defendants removed the case to federal court, arguing that "plaintiffs' claims implicate and depend upon a substantial federal question . . . . [namely,] whether indemnity [was] available for Section 16(b) liability." Id. at 1265.  The Jain court granted a remand motion, holding that there was no federal jurisdiction because the federal issue in the case, even if substantial and disputed, was not a "necessary element of the plaintiff's state law claim." Id. at 1268 (emphasis in original).  The court observed that the plaintiffs "need not prove the contract was valid under federal law to bring a breach of contract claim.  If Defendants want to argue that such coverage conflicts with the general goals of Section 16(b)

liability, that argument is a defense to the enforceability of the insurance contract . . . essentially a specific variation on the more general void against public policy defense," in which the party raising the defense bears the burden of proving it.  Id. at 1269-70.

Plaintiffs here are similarly situated to the insurer in Liberty Mutual and the directors and officers in Jain.  As in those cases, Daileader's argument that the Bankruptcy/Insolvency Exclusion is void under the Bankruptcy Code as an ipso facto provision is not an element of Plaintiffs' affirmative claim, but is instead a defense Daileader may raise in arguing that the Bankruptcy/Insolvency Exclusion is unenforceable.

Citing Baker v. Simpson, 613 F.3d 346 (2d Cir. 2010), Daileader argues that Plaintiffs' claims arise under federal law because bankruptcy is governed by federal law, and bankruptcy is the "but-for" cause of Plaintiffs' claims.  (Opp. (Dkt. No. 21) at 15)  In Baker, the Second Circuit affirmed the denial of a motion to remand a state law claim regarding an attorney's alleged malpractice in a bankruptcy proceeding.  The court held that federal bankruptcy law was a but-for element of plaintiff's claim, because plaintiff would have to prove certain points of bankruptcy law to establish that the attorney had committed malpractice.  Baker, 613 F.3d at 351.  The court further noted that there was a strong federal interest in regulating the conduct of lawyers appearing before bankruptcy courts.  Id.  For these reasons, the Second Circuit concluded that plaintiff's claim arose under federal law.

Baker has no application here.  Unlike in Baker, Plaintiffs need not argue an issue of federal law to establish their right to relief.  Instead, as discussed above, in order to trigger their rights under the policies, Plaintiffs need only establish that bankruptcy petitions were filed and that the Trustee has alleged that Daileader caused the bankruptcies.

Daileader further argues that Plaintiffs "bear the burden of proving that the Bankruptcy/Insolvency Exclusion unambiguously precludes coverage," and that Plaintiffs must "necessarily . . . demonstrate[e] that no laws preclude or invalidate the 'Bankruptcy/Insolvency Exclusion,'" including provisions of the federal bankruptcy code that may prohibit the exclusion as an unlawful _ipso_ _facto_ clause.  (Opp. (Dkt. No. 21) at 19–20)  While Daileader cites case law indicating that insurers "bear the burden of proving that the Bankruptcy/Insolvency Exclusion unambiguously precludes coverage" (_id._), none of these cases suggests that a federal question arises whenever an insurer brings a case that may elicit a federal law defense.

Daileader cites First State Ins. Co. v. J & S United Amusement Corp., 67 N.Y.2d 1044 (1986) for the proposition that "insurance companies that bring declaratory judgment actions against their policyholders must demonstrate 'as a matter of law that there is no possible factual or legal basis on which the insurer may eventually be held liable under its policy.'" (Opp. (Dkt. No. 21) at 19 (quoting First State Ins. Co., 67 N.Y.2d at 1046) )  Neither First State Ins. Co. nor any New York court applying this passage has held, however, that an insurer's declaratory judgment complaint must contain allegations rebutting each and every defense that an insured might raise.

Daileader's argument – if accepted – would dramatically expand federal jurisdiction over state law insurance disputes where an exclusion is at issue.  If allegations rebutting any possible defense were a required part of an insurer's declaratory judgment complaint, federal jurisdiction would lie whenever there was any conceivable basis for a federal defense to an exclusion.  Such an approach is consistent neither with precedent nor with principles of federalism.

The Court concludes that the bankruptcy proceedings are merely factual predicates for Plaintiffs' state law claims, and that the Amended Complaint's reference to a possible federal defense – that the Bankruptcy/Insolvency Exclusion is void under the Bankruptcy Code as an ipso facto provision – does not provide a basis for the exercise of federal jurisdiction.

**B.     Whether Abstention is Mandatory**

As discussed below, even if the Amended Complaint were read to present a basis for the exercise of federal jurisdiction, mandatory abstention applies in the circumstances of this case.[5]

**1.     Federal Jurisdiction Under 28 U.S.C. § 1334(b)**

28 U.S.C. § 1452(a) provides that

> [a] party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under [28 U.S.C. § 1334].

---

[5]  Because the Amended Complaint does not satisfy the well-pleaded complaint rule, this Court has concluded that it lacks jurisdiction under 28 U.S.C. §§ 1334 and 1452, the bankruptcy jurisdiction and removal statutes.  See Sokola v. Weinstein, No. 20-CV-0925 (LJL), 2020 WL 3605578, at *7 (S.D.N.Y. July 2, 2020) (applying the well-pleaded complaint rule to a bankruptcy removal case); Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC, 357 F. Supp. 2d 529, 535 (E.D.N.Y. 2004) ("it is well-established that the well-pleaded complaint rule applies both to federal question jurisdiction under 28 U.S.C. § 1331, and to bankruptcy jurisdiction under 28 U.S.C. § 1334").  The Court acknowledges, however, that there is contrary authority as to whether the well-pleaded complaint rule applies in the context of "'related to' bankruptcy jurisdiction removals."  See Whitney Lane Holdings, LLC v. Don Realty, LLC, No. 1:08-CV-775 GLS/RFT, 2009 WL 6315323, at *10-11 (N.D.N.Y. Oct. 27, 2009) (noting "a split amongst the courts in this arena" and stating that "the Second Circuit has yet to definitively rule as to the application of the well-pleaded complaint rule in 'related to' bankruptcy jurisdiction removals"), report and recommendation adopted in part, rejected in part on other grounds, No. 08-CV-775 (GKS.RFT), 2010 WL 1257879 (N.D.N.Y. Mar. 26, 2010).  Accordingly, the Court goes on to consider whether abstention is mandatory in the circumstances of this case.

Under 28 U.S.C. § 1334(b), "the district courts . . . have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." A case "arises under" Title 11 when it is "predicated on a right created by a provision of Title 11." Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 407 (S.D.N.Y. 1991) (quotation omitted). A case "arises in" Title 11 when the claims "are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside the bankruptcy." Baker, 613 F.3d at 350–51 (quotation omitted). A case is "related to" Title 11 where the action's "outcome might have any conceivable effect on the bankrupt estate." Parmalat Cap. Fin. Ltd. Bank of Am. Corp. ("Parmalat I"), 639 F.3d 572, 579 (2d Cir. 2011) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir.1992)).

Whether a case (1) arises under or in Title 11 or (2) is merely related to a case under Title 11 is coterminous with the analysis of whether a case is a "core" or "non-core" bankruptcy proceeding. Baker, 613 F.3d at 350. If a case arises under or arises in Title 11, then the case constitutes a "core" proceeding. Id. If a case is only related to a case under Title 11 but does not arise under or arise in Title 11, then the case constitutes a "non-core" proceeding. Id.; see In re Leco Enters., 144 B.R. 244, 248 (S.D.N.Y. 1992) ("[T]he core proceedings listed in 28 U.S.C. § 157(b)(2) are essentially identical to the claims defined as 'arising in' and 'arising under' proceedings in 28 U.S.C. § 1334.").

The core/non-core distinction derives from Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982). In that case, the Court held that the 1978 Bankruptcy Act violates Article III of the United States Constitution because it vests bankruptcy judges with the power to adjudicate legal disputes that have little to do with core bankruptcy functions. See id. at 71 ("[T]he restructuring of debtor-creditor relations, which is at the core of

18

the federal bankruptcy power, must be distinguished from the adjudication of state-created

private rights, such as the right to recover contract damages. . . .").

      Determining whether the instant case is core or non-core is central to deciding the

instant motion to remand, because 28 U.S.C. § 1334(c)(2) – the bankruptcy jurisdiction statute –

mandates that district courts abstain from hearing non-core cases where the action "is

commenced, and can be timely adjudicated, in a State forum":

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not
> have been commenced in a court of the United States absent jurisdiction under
> this section, the district court shall abstain from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State forum of
> appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

      In sum, if this Court finds that the instant case is merely related to bankruptcy,

i.e., is a non-core proceeding, and there is no other source of jurisdiction, then the doctrine of

mandatory abstention requires that the Court remand the case to state court, so long as the

proceeding can be "timely adjudicated" in a state forum.  See Mt. McKinley Ins. Co. v. Corning

Inc., 399 F.3d 436, 447 (2d Cir. 2005) (holding that the mandatory abstention rule of 28 U.S.C.

§1334(c)(2) applies to cases removed pursuant to 28 U.S.C. § 1452).

      Here, Daileader concedes that this case does not arise under Title 11 (Opp. (Dkt.

No. 21) at 13 n.4), and Plaintiffs do not dispute that this case is related to a case under Title 11.

The question is thus whether the instant case "arises in" Title 11 – and is therefore a core

proceeding – or is a "related to" case – and is therefore a non-core proceeding.

    **2.**    **Whether this Case is a Core or Non-Core Proceeding**

      This case presents a state law insurance coverage dispute that is not alleged to be

central to the disposition of Debtors' estates.  The general rule in this Circuit is that such

insurance coverage disputes are non-core proceedings.  See Mt. McKinley Ins. Co., 399 F.3d at

450 ("Based on the pre-petition nature of the insurance policies, plaintiffs' attempt to adjudicate

the rights of non-debtors only, and the tangential and speculative effect that resolution of the

affiliate insurer claims would have on the bankruptcy proceeding . . . , we conclude that these

claims are not core to the bankruptcy proceeding."); Roman Cath. Diocese of Rockville Ctr.,

New York v. Arrowood Indem. Co., No. 20-CV-11011 (VEC), 2021 WL 1978560, at *7

(S.D.N.Y. May 17, 2021) (holding that debtor's claim against insurer for indemnification was

non-core); DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co., 464 B.R. 587, 593

(S.D.N.Y. 2012) (holding that debtor's declaratory judgment action against insurers was "a non-

core state law action which need not be resolved by the bankruptcy court for equitable trust

administration"); Petition of McMahon, 222 B.R. 205, 208-09 (S.D.N.Y. 1998) (holding that

declaratory judgment action addressing alleged right to indemnification was a non-core

proceeding); Drexel Burnham Lambert Grp., 130 B.R. at 408–09 & 409 n.2 ("Disputed coverage

claims by debtors against insurers are non-core."); In re Blue Point Carpet, Inc., 86 B.R. 327,

328 (Bankr. E.D.N.Y. 1988) (holding that bankruptcy trustee's breach of contract case against

insurer was non-core).

   In re Cmty. Mem'l Hosp., 532 B.R. 898 (E.D. Mich. 2015), is most directly on

point.  In that case, a liquidating trust formed out of a debtor's Chapter 11 bankruptcy proceeding

"filed suit against [the debtor]'s former directors and officers, alleging that they had breached

their fiduciary duties."  Id. at 901.  After the debtor's D&O insurer "denied coverage for the

matter pursuant to the 'bankruptcy/insolvency/creditors' exclusion," the liquidating trust "filed

an adversary proceeding seeking declaratory relief and breach-of-contract damages against [the

insurer], claiming that the exclusion [was] unenforceable as a matter of bankruptcy law" because

"the Bankruptcy Code . . . void[s] ipso facto clauses." Id.  In the context of a motion to withdraw the reference, the court held that the case was a non-core proceeding.  The court agreed with the insurer that the case was "a plain vanilla, state law insurance coverage dispute," and held that "the [t]rust [could not] convert its state-law breach-of-contract claim into a core matter simply because it may have a defense to a defense that is premised on the application of the bankruptcy code." Id. at 904-05.

Here, although the instant case relates to a bankruptcy proceeding, at bottom it is a state law contract dispute – brought under state law declaratory judgment provisions – about the extent of insurance coverage.  The bankruptcy proceeding – and the allegations made in that proceeding – merely provide the factual predicates upon which Plaintiffs assert their state law statutory right of action and state law contract rights under their policies with Debtors.  Since these rights exist outside of bankruptcy, they do not arise in bankruptcy for jurisdictional purposes.  And the possibility that a defense may necessitate interpretation of the Bankruptcy Code does not suffice to render the instant case a core proceeding.

In re U.S. Lines, Inc., 197 F.3d 631 (2d Cir. 1999), and In re County Seat Stores, Inc., 2002 WL 141875 (S.D.N.Y. Jan. 31, 2002) – cited by Daileader (Opp. (Dkt. No. 21) at 15) – are not to the contrary.  As an initial matter, the facts in U.S. Lines are not comparable to those here.  U.S. Lines involves insurers' coverage obligations to debtors, see In re U.S. Lines, 197 F.3d at 635, while here the dispute involves coverage obligations to Daileader, who was Debtors' director and officer.  Moreover, the policies at issue in U.S. Lines include "a pay-first provision by which the insurers' liability [was] not triggered until the insured pays the claim of [certain creditors]." Id.  Here, there is no such provision.  Finally, the "insurance proceeds" at issue in U.S. Lines were the "only potential source of cash available to [a] group of creditors" whose

claims were the chief issue in the bankruptcy proceeding. Id. at 638.  There is no such allegation with respect to the excess D&O insurance policies at issue here.

As Judge Caproni recently explained in Roman Catholic Diocese of Rockville Center, the Second Circuit and multiple courts in this District "have limited [U.S. Lines'] holding to its specific facts," including "that 'the policies were the only asset available'" and that "'the policies were pay-first policies that required the trustee to pay the claims and then seek indemnification.'" Roman Catholic Diocese, 2021 WL 1978560 at *6 (quoting Mt. McKinley Ins. Co., 399 F.3d at 448; also citing DeWitt Rehab. & Nursing Ctr., 464 B.R. at 592 and In re: Residential Cap., LLC, No. 15-CV-2712, 2015 WL 9302834, at *4 (S.D.N.Y. Dec. 21, 2015)). After reviewing the relevant case law, Judge Caproni concludes that "a declaratory judgment action about the scope of insurance policies is only core when the insurance policies are the lone asset and provisions in the insurance policies necessarily implicate core bankruptcy functions to enable the proceeds of the policies to be accessed." Id.

County Seat Stores – cited by Daileader (Opp. (Dkt. No. 21) at 15) – is an exception to the prevailing trend of reading U.S. Lines narrowly.  In County Seat Stores – a 2002 decision – a bankruptcy trustee "brought an adversary proceeding" against the debtor's former directors and officers, alleging "breaches of fiduciary duty, corporate waste and mismanagement, and fraudulent conveyance." County Seat Stores, 2002 WL 141875 at *2.  The trustee then filed a second adversary proceeding – in which the debtor's former directors and officers subsequently intervened as plaintiffs – against the debtor's D&O insurer.  In this second adversary proceeding, the trustee sought "a declaration that . . . the . . . Insured Exclusion [of the D&O policy did] not apply to the claims raised in [the adversary proceeding against the debtor's former directors and officers]." Id. (emphasis omitted).  Although the D&O policy at issue in County Seat Stores did

not have a pay-first provision, the court nevertheless held that U.S. Lines applied and that the case was a core proceeding.  Id. at *5-6.  In so concluding, the court found that – despite the absence of a pay-first provision – the case resembled U.S. Lines in that the D&O insurance proceeds "may . . . be the most important asset of the estate" and in that it would "be difficult for the Trustee to decide questions relating to the distribution of assets among creditors without a decision in the [c]overage [a]ction," because the directors and officers had "sought to be paid for the substantial costs of defending the [adversary proceeding], to which they may or may not be entitled."  Id. at *6.

  As Judge Caproni explains in Roman Catholic Diocese, County Seat Stores is out of step with more recent case law in applying U.S. Lines to hold that a dispute over an insurance policy without a pay-first provision is a core proceeding.  In any event, even if this Court were to credit County Seat Stores' legal analysis, this case differs in that there is no allegation that the D&O policies are the most important asset of the estates or that Daileader has made an indemnification demand on the estates.

  The Court concludes that the instant case is not a core proceeding.

### 3.   Other Factors Relevant to the Abstention Analysis

#### a.   Whether there Is an Alternative Basis for Federal Jurisdiction

  It is a condition for mandatory abstention under 28 U.S.C. § 1334(c)(2) that "an action could not have been commenced in a court of the United States absent [bankruptcy] jurisdiction. . . ."

  As discussed above, this case does not arise under federal bankruptcy law, so there is no basis for jurisdiction under 28 U.S.C. § 1331.

  Nor is there diversity jurisdiction under 28 U.S.C. § 1332.  Federal courts have diversity jurisdiction only when there is complete diversity between the parties – that is, when all

plaintiffs are citizens of different states from all defendants.  See 28 U.S.C. § 1332; Lincoln

Prop. Co. v. Roche, 546 U.S. 81, 88 (2005); Advani Enters., Inc. v. Underwriters at Lloyds, 140

F.3d 157, 160 (2d Cir. 1998).  Where any plaintiff shares state citizenship with any defendant,

complete diversity does not exist, and diversity jurisdiction does not exist.  Diversity jurisdiction

is determined at the time of removal.  See Grupo Dataflux v. Atlas Global Grp. L.P., 541 U.S.

567, 570–71 (2004); United Food & Com. Workers Union, 30 F.3d at 301.

      As noted earlier, at the time of removal, Aaron Kibbey, a New Jersey resident,

was a defendant in this case.  (Am. Cmplt. (Dkt. No. 1-3) ¶ 7)  Plaintiffs Crum & Forster and

StarStone have their principal place of business in New Jersey (Id. ¶¶ 3, 5) and thus are New

Jersey citizens for purposes of diversity jurisdiction.  See 28 U.S.C. § 1332(c)(1).  Because there

was not complete diversity at the time of removal, there is no diversity jurisdiction.[6]

---

[6] "[A] plaintiff may not defeat a federal court's diversity jurisdiction . . . by merely joining as
defendants parties with no real connection with the controversy." Pampillonia v. RJR Nabisco,
Inc., 138 F.3d 459, 460–61 (2d Cir. 1998). Here, Daileader mentions in passing that Plaintiffs
"appear to have included [Kibbey] in the lawsuit simply to destroy diversity." (Opp. (Dkt. No.
21) at 10)  But Daileader does not explain the factual basis for his claim that Kibbey has "no real
connection with the controversy," Pampillonia, 138 F.3d at 460-61, and the record demonstrates
that he does in fact have a connection to the controversy:

1. the Trustee named Kibbey as a defendant in the Adversary Proceedings and alleges that
   Kibbey served as the Chief Restructuring Officer of Oaktree (see, e.g., Amended
   Complaint ¶ 46, Fort v. Kibbey, Adv. Proc. No. 21-80059-hb (Bankr. D.S.C. Dec. 7,
   2021) (Dkt. No. 1-5));

2. the bankruptcy court identified Kibbey as an insured director and/or officer under the
   terms of the primary policy that Plaintiffs' policies follow (see Order, In re Oaktree
   Medical Centre, LLC, No. 19-05154-HB (Bankr. D.S.C. Nov. 9, 2021), Mascia Decl. Ex.
   F (Dkt. No. 27-6) at 4, 6); and

3. Plaintiffs have issued letters declining coverage as to Kibbey (see Am. Cmplt. Exs. J
   (Dkt. 1-5) at 172, K (Dkt. No. 1-5) at 189, L (Dkt. No. 1-5) at 221, M (Dkt. No. 1-5) at
   239, N (Dkt. No. 1-5) at 265).

  **b.**  **Whether the State Court Could Adjudicate**
     **the Dispute in a Timely Manner**

   Where a case is only related to bankruptcy and there is no non-bankruptcy basis

for jurisdiction, abstention is mandatory under 28 U.S.C. §1334(c)(2) only where "an action is

commenced, and can be timely adjudicated, in a [s]tate forum of appropriate jurisdiction."

Daileader argues that New York County Supreme Court – where this action was filed – cannot

timely adjudicate the parties' dispute.

   In Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp. ("Parmalat I"), 639 F.3d 572 (2d

Cir. 2011), the Second Circuit set out four factors courts should consider in determining whether

a case related to bankruptcy can be adjudicated in a timely manner in state court:

> (1) the backlog of the state court's calendar relative to the federal court's
> calendar; (2) the complexity of the issues presented and the respective expertise of
> each forum; (3) the status of the title 11 bankruptcy proceeding to which the state
> law claims are related; and (4) whether the state court proceeding would prolong
> the administration or liquidation of the estate.

Parmalat I, 639 F.3d  at 580.

   As to the first Parmalat I factors, "[t]he question is not whether the action would

be more quickly adjudicated in [federal court] than in state court, but rather, whether the action

can be timely adjudicated in the state court."  Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.

("Parmalat II"), 671 F.3d 261, 267 (2d Cir. 2012) (quotation omitted) (emphasis in original).

"Timeliness cannot reasonably be defined as a fixed period of time.  Instead, timeliness is a case-

and situation-specific inquiry that requires a comparison of the time in which the respective state

---

Based on this record, Kibbey appears to have had a connection to this controversy at the time
of removal, and therefore Daileader's unsupported claim that he was fraudulently joined is
rejected.

and federal forums can reasonably be expected to adjudicate the matter." Parmalat I, 639 F.3d at
580.

      Here, the first factor – relative backlog – either is neutral or slightly favors
denying the motion to remand.  The statistics Daileader has submitted indicate that in 2021 the
New York County Supreme Court disposed of fewer cases than were filed, whereas this District
disposed of more cases than were filed.  (See New York State Unified Court System, 2021
Annual Report, Mascia Decl., Ex. B (Dkt. No. 27-2) at 67 tbl. 5; U.S. Courts, Statistical Tables
for the Federal Judiciary – December 2021, Table C-5, Mascia Decl., Ex. D (Dkt. No. 27-4) at 1)
However, the New York state court data does not break down civil case filings by type, and
therefore does not enumerate backlogs of contract cases, insurance cases, or declaratory
judgment actions specifically.  In addition, since contract cases are only 7.5 percent of all
statewide civil filings in Supreme Court (Mascia Decl., Ex. B (Dkt. No. 27-2) at 67 fig. B), and
given that cases involving insurance coverage disputes are but a fraction of all contract cases, the
proffered data is not reliably predictive.  See In re AOG Ent., Inc., 569 B.R. 563, 582 (Bankr.
S.D.N.Y. 2017) ("[C]aseload comparisons and dispositions are not particularly meaningful
. . . .").  "With no persuasive evidence on the issue in front of us, we cannot presume one court's
backlog is more manageable than the other's." Allstate Ins. Co. v. Credit Suisse Secs. (USA)
LLC, No. 11 CIV. 2232 NRB, 2011 WL 4965150, at *7 (S.D.N.Y. Oct. 19, 2011).  Moreover,
even assuming arguendo that the New York County Supreme Court has a greater backlog,
Plaintiff has not demonstrated that this relative difference will result in a substantial delay here.
See Parmalat II, 671 F.3d at 267 (reversing district court's denial of remand motion where the

"difference of timing [between federal and state court adjudication] appear[ed] to be a matter of months, rather than years").[7]

The second Parmalat I factor – the complexity of the issues presented and the respective expertise of each forum, favors remand. "Where the legal issues in a case are especially complex, the forum with the most expertise in the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion relative to the other forum. On the other hand, when the facts in a case are especially complex, the forum with greater familiarity with the record may likewise be expected to adjudicate the matter more quickly." Parmalat I, 639 F.3d at 580–81. Since there has been no discovery and limited motion practice, this Court's familiarity with the record is minimal. Accordingly, this Court has little to no head start compared to a state court considering the dispute on remand.

As to expertise in relevant law, Daileader argues that – because this case involves a bankruptcy-related issue – this Court has greater expertise than the New York County Supreme Court. (Opp. (Dkt. No. 21) at 25–26) But New York state courts are fully capable of adjudicating contract disputes – including insurance coverage disputes – in the bankruptcy context. See, e.g., Greene Techs. Inc. v. Atoma Int'l of Am. Inc., 296 A.D.2d 695, 695 (3d Dept. 2002) (analyzing whether termination of a contract was an unlawful application of ipso facto clause); First Nationwide Bank v. Brookhaven Realty Assocs., 223 A.D.2d 618, 620-21 (2d Dept. 1996) (in a mortgage foreclosure action, analyzing whether bankruptcy default clause was an unlawful ipso facto clause); Westchester Fire Ins. Co., 186 A.D.3d at 140-42 (analyzing scope

_____

[7] Daileader also advances arguments about the number of pending cases in the U.S. District Court for the District of South Carolina, where Daileader claims "this case should be transferred," and the U.S. Bankruptcy Court for the District of South Carolina. (Opp. (Dkt. No. 21) at 24) This Court will not consider case count statistics that would be relevant only if Daileader were to prevail on a hypothetical motion that has not yet been filed.

of bankruptcy exception to the "insured vs. insured" exclusion in a D&O policy); Alvarez, 2020 WL 7011751 (dispute over insurance coverage for an adversary proceeding in the Sears bankruptcy); 380 Yorktown Food Corp. v. 380 Downing Drive, LLC, 35 Misc. 3d 1243(A), 957 N.Y.S.2d 267 (Westchester Cnty. Sup. Ct. 2012) (analyzing whether rejection of a lease in a bankruptcy proceeding amounted to a "voluntary surrender" under New York law).

Moreover, the federal bankruptcy law issue will be just one aspect of this case. The Amended Complaint asks the court to interpret policy terms and make a finding concerning "benefit of the bargain," and Defendant anticipates advancing multiple arguments regarding interpretation of the policies. (See Am. Cmplt. (Dkt. No. 1-3) ¶¶ 55–56, 59–61; Opp. (Dkt. No. 21) at 9 n.2, 17 n.6 ("Mr. Daileader will succeed in this action even if the Bankruptcy/Insolvency Exclusion is not void under the Bankruptcy Code, including because the terms of the Bankruptcy/Insolvency Exclusion do not even apply to the Trustee's claims and because the allegations of the Adversary Proceedings plainly trigger the Excess Insurance Companies' duty to defend Mr. Daileader.")).  In sum, this case presents numerous issues of contract interpretation, and Daileader does not dispute that the New York County Supreme Court is fully capable of resolving contract law issues, whether under New York or South Carolina law. (See Opp. (Dkt. No. 21) at 26 ("[A] state court is certainly capable of applying New York and South Carolina rules on policy interpretation. . . .")).

With respect to the third factor, Daileader has not demonstrated that the parties "need the state law claims to be quickly resolved as a result of the status of the ongoing title 11 bankruptcy proceeding," Parmalat I, 639 F.3d at 581, especially given that the bankruptcy matter is a Chapter 7 proceeding. See id. (stating that "courts have found that what might be timely in the Chapter 7 context is not necessarily timely in Chapter 11 cases where time is of the essence,"

and that "' in deciding whether a matter may be timely adjudicated, perhaps the single most important factor is the nature of the underlying chapter proceeding'") (quoting In re Leco Enters., 144 B.R. at 251).

      With respect to the fourth factor, Daileader has not demonstrated that any delay resulting from remand "would prolong the administration or liquidation of the estate." Id. Daileader argues that, because he has priority under the insurance policies compared to Debtors, "[e]xpeditious adjudication of this coverage litigation is necessary so that the Bankruptcy Court will be able to determine what insurance assets might be available to the bankruptcy estate or in the adversary proceedings." (Opp. (Dkt. No. 21) at 27)  But Daileader does not explain why this determination is necessary for liquidation of the estates.  Moreover, the bankruptcy court has stated that "any lower priority claims the Debtors may have under the policy are purely speculative." (Order, In re Oaktree Medical Centre, LLC, No. 19-05154-HB (Bankr. D.S.C. Nov. 9, 2021), Mascia Decl., Ex. F (Dkt. No. 27-6) at 6).

      In sum, analysis of the Parmalat I factors indicates that the parties' dispute can be adjudicated in a timely fashion in state court.

## CONCLUSION

      For the reasons stated above, Plaintiffs' motion to remand is granted.  The Clerk of Court is directed to remand this case to the Clerk of Supreme Court of the State of New York, New York County, terminate all pending motions, and close this case.

Dated: New York, New York
     January 12, 2023

                    SO ORDERED.

                    _____
                    Paul G. Gardephe
                    United States District Judge